UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANGELA CRAWFORD, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 1:21-cv-02238 (RC) |
| MARTIN J. WALSH, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

Plaintiff brings this action against Martin J. Walsh, Secretary of the United States Department of Labor. This matter is before the Court on plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order, ECF No. 2, and Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), ECF No. 9. For the reasons discussed below, the Court denies the former and grants the latter.

**I. BACKGROUND**

Congress enacted the Coronavirus Aid, Relief and Economic Security Act ("CARES Act"), *see* 15 U.S.C. 9001 *et seq.*, which, among other provisions, created temporary Pandemic Unemployment Assistance benefits to be administered by the States through agreements with the Secretary of Labor. *See* Mem. of. P. & A. in Support of Def.'s Combined Mot. to Dismiss and Opp'n to Pl.'s Mot. for Temporary Restraining Order and Prelim. Inj. (ECF No. 9-1, "Def.'s Mem.") at 5 (page numbers designated by CM/ECF). Plaintiff, a Georgia resident who lost her job due to COVID-19, received such benefits until the State of Georgia ended its agreement with the Secretary effective June 26, 2021. *See id.*; Compl. and Mot. for Prelim. Inj. and Temporary

1

Restraining Order (ECF No. 1, "Compl.") at 4-5, 12.  Thus ended plaintiff's sole source of income, allegedly causing her "irreparable harm as [she had] no other financial assistance." *Id.* at 6.  Plaintiff demands a "preliminary injunction and temporary restraining order prohibiting [the Secretary] from ceasing pay [her] federal Pandemic Unemployment Benefit Assistance funds." *Id.* at 16.

## II. LEGAL STANDARDS

### A. Dismissal Under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must "state a claim upon which relief can be granted" to survive a motion to dismiss.  A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  It does not test a plaintiff's ultimate likelihood of success on the merits, but only forces the Court to determine whether a plaintiff has properly stated a claim. *ACLU Found. of S. Cal. v. Barr*, 952 F.2d 457, 467 (D.C. Cir. 1991).  "[W]hen ruling on a defendant's motion to dismiss [under Rule 12(b)(6)], a judge must accept as true all of the factual allegations contained in the complaint[,]" *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (citations omitted), and construe them liberally in the plaintiff's favor.

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements," are insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. The Court neither must accept a plaintiff's legal conclusions as true, *see id.*, nor must presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.

A *pro se* plaintiff's pleading is held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). While the Court must "consider[] in toto" all of a *pro se* plaintiff's filings to determine whether they "set out allegations sufficient to survive dismissal," *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 151 (D.C. Cir. 2015) (reversing the district court because it failed to consider allegations found in a *pro se* plaintiff's opposition to a motion to dismiss), it is not the Court's job to "cull through every filing of a *pro se* litigant to preserve a defective complaint," *Richardson v. United States*, 193 F.3d 545, 549 (D.C. Cir. 1999). "A *pro se* complaint, like any other, must present a claim upon which relief can be granted." *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981) (per curiam). Dismissal always remains appropriate "where the plaintiff's complaint provides no factual or legal basis for the requested relief." *Strunk v. Obama*, 880 F. Supp. 2d 1, 3 (D.D.C. 2011) (citations omitted).

### B. Injunctive Relief Under Rule 65

A temporary restraining order is an extraordinary remedy that is granted sparingly. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Similarly, a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter*, 555 U.S. at 22). "The same standard applies to both temporary restraining orders and to preliminary injunctions." *Sterling Com. Credit-Michigan, LLC v. Phoenix Indus. I, LLC*, 762 F.

Supp. 2d 8, 12 (D.D.C. 2011). Whether to grant such relief "turns on four factors: (i) whether the plaintiff is likely to succeed on the merits of the action; (ii) whether she will suffer irreparable harm absent an injunction; (iii) whether the balance of the equities tips in her favor; and (iv) whether an injunction is in the public interest." *J.D. v. Azar*, 925 F.3d 1291, 1325 (D.C. Cir. 2019) (citing *Winter*, 555 U.S. at 20).

## II. DISCUSSION

Plaintiff asserts that the Secretary of Labor must continue to pay her Pandemic Unemployment Assistance benefits notwithstanding Georgia's decision to end its agreement, *see* Compl. at 4-5; Pl. Opp'n Resp. to Def. Mot. to Dismiss and Mem. of P. & A. (ECF No. 12, "Pl. Opp'n") at 6-8, because the CARES Act's language is mandatory, *see, e.g.*, 15 U.S.C. § 9021(b) (stating "the Secretary shall provide to any covered individual unemployment benefit assistance while such individual is unemployed . . ."), 15 U.S.C. § 9021(c)(1) (stating "the assistance authorized under subsection (b) shall be available to a covered individual . . ."). In her view, the Secretary is obligated "to provide the benefit funds to the citizens of the State where the Governor of that State elected not to participate in an agreement with the [Secretary] . . . because it was not Congress['] intent for the citizens to be without the benefit funds just because the State elected not to participate[.]" Pl. Opp'n at 6-7; Compl. at 3-4.

Further, plaintiff opines that "Congress placed a ministerial duty on [the Secretary of Labor] to provide continue[d] benefit funds to the citizens of that State, because it was Congress['] intent for the citizens of the (50) States to receive the full benefits up to the time such benefits expire by law." Pl. Opp'n at 7; *see id.* at 8-11; Compl. at 11. By terminating benefits, plaintiff contends, the Secretary "exceeded his statutory authority" by refusing to

4

perform "an act that Congress mandated [he] perform." Compl. at 14. Missing, however, is any legal authority to support plaintiff's position.

For all plaintiff's reliance on the CARES Act's language, she ignores the one mandatory provision which defeats her claim:

> The Secretary shall provide the assistance authorized under subsection (b) *through agreements with States* which, in the judgment of the Secretary, have an adequate system for administering such assistance through existing State agencies, including procedures for identity verification or validation and for timely payment, to the extent reasonable and practicable.

15 U.S.C. § 9021(f)(1) (emphasis added).

Congress specified that regulations pertaining to Disaster Unemployment Assistance under the Stafford Act, *see* 42 U.S.C. § 5177(a); 20 C.F.R. Part 625, would apply to the CARES Act, *see* 5 U.S.C. § 9021(h). Accordingly, as is the case with Disaster Unemployment Assistance benefits, Pandemic Unemployment Assistance benefits were available to covered individuals only "if . . . [t]he . . . State . . . has entered into an Agreement," 20 C.F.R. § 625.4(b), and only for the time period the agreement between the Secretary and the State was effective, *see* 20 C.F.R. § 625.12(b)(1) (providing that Disaster Unemployment Assistance "is payable to an individual only . . . pursuant to an Agreement . . . and with respect to weeks in which the Agreement is in effect"); *see also* 29 C.F.R. § 625.2(b) (defining the term "agreement" as "the Agreement entered into pursuant to the [Stafford] Act, between a State and the Secretary of Labor of the United States, under which the State agency of the State agrees to make payments of Disaster Unemployment Assistance in accordance with the [Stafford] Act and the regulations and procedures thereunder prescribed by the Secretary").

The State of Georgia, though the Georgia Department of Labor, entered into an agreement with the Secretary of Labor on March 28, 2020, to pay Pandemic Unemployment

Assistance benefits, and ended the agreement effective June 26, 2021. In short, once the State of Georgia ended its agreement with the Secretary, there would be no more Pandemic Unemployment Assistance benefits available to the citizens of that State. Contrary to plaintiff's interpretation of the CARES Act, the Secretary of Labor neither is obligated to provide Pandemic Unemployment Assistance benefit funds to any State which ends its agreement with the Secretary, nor is obligated to make payments to any individual directly.

### III. CONCLUSION

The Court concludes that the complaint fails to state a claim upon which relief can be granted. Therefore, the Court grants the Secretary's motion to dismiss and denies plaintiff's motion for injunctive relief. An Order is issued separately.

DATE: March 31, 2022

/s/
RUDOLPH CONTRERAS
United States District Judge